JAMES MURRAY, Suing on Behalf of Himself and Other Stockholders of BESSON & Co., Appellant and Respondent, *v.* EDWARD S. SMITH et al., as Executors of MILLARD F. SMITH, Deceased, et al., Respondents and Appellants.

Stock corporations — stockholder's action — when action brought by stockholder to compel estate of a former president of the corporation to repay advances, alleged to have been made to decedent and a deceased treasurer of the corporation with decedent's knowledge, cannot be maintained.

Plaintiff brings suit on behalf of himself and other stockholders in a corporation, against the executors of a decedent who was president of the corporation to recover advances made by the corporation to such decedent and to the deceased treasurer thereof, claiming that the advances to the latter were made with the knowledge of the defendant's testator. Liability is claimed under the provisions of section 29 of the Stock Corporation Law (Cons. Laws, chap. 59), which provides: " No loan of moneys shall be made by any stock corporation, except a moneyed corporation, or by any officer thereof out of its funds to any stockholder therein. * * * In case of the violation of any provision of this section, the officers or directors making such loan, or assenting thereto, or receiving or discounting such notes or other evidences of debt, shall, jointly and severally, be personally liable to the extent of such loan and interest, for all the debts of the corporation contracted before the repayment of the sum loaned, and to the full amount of the notes or other evidences of debt so received or discounted, with interest from the time such liability accrued." No question is raised as to the liability of the estate of decedent for advances made to him. *Held*, that the record is barren of any evidence that the decedent knew of the loans to such treasurer or assented to them, and hence no recovery can be had therefor against his representatives.

*Murray* v. *Smith*, 166 App. Div. 528, modified.

(Argued May 1, 1918; decided June 4, 1918.)

CROSS-APPEALS from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 11, 1915, modifying and affirming as modified a judgment in favor of defendants

entered upon a dismissal of the complaint by the court on trial at Special Term.

· The nature of the action and the facts, so far as material, are stated in the opinion.

*George W. Elkins* and *Charles H. Tuttle* for plaintiff, appellant and respondent. So much of the determination of the Appellate Division as grants the plaintiff judgment directing that the defendant Besson & Co. recover the amount of the loans to Smith and Disosway, with interest, must be affirmed. (*Cont. Securities Co.* v. *Belmont,* 206 N. Y. 7; *Kent* v. *Quicksilver Mining Co.,* 78 N. Y. 159; *Munson* v. *S., etc., R. R. Co.,* 103 N. Y. 58; *Wardell* v. *U. P. R. R. Co.,* 103 U. S. 651.) The determination of the Appellate Division should be reversed in so far as it failed to adjudge that Besson & Co. were entitled to the return of the increase of salary to himself and Disosway, and for which Smith voted. (*Kreitner* v. *Burgweger,* 174 App. Div. 48; *Jacobson* v. *Brooklyn Lumber Co.,* 184 N. Y. 152; *Pew* v. *G. Nat. Bank,* 130 Mass. 391; *MacNaughton* v. *Osgood,* 41 Hun, 109; *Shaw* v. *Ansaldi Co.,* 178 App. Div. 589; *Pollitz* v. *W. R. R. Co.,* 207 N. Y. 113; *Stewart* v. *L. V. R. R. Co.,* 38 N. J. L. 505; *Paine* v. *Irwin,* 16 Hun, 390; *A. Ry. Co.* v. *Blaikie,* 1 Macq. 461; *City of Chicago* v. *Tribune Co.,* 248 Ill. 242; *Nunemacher* v. *City of Louisville,* 98 N. Y. 334; *Hoyle* v. *Plattsburg & Montreal R. R. Co.,* 54 N. Y. 314.)

*Robert H. Wilson* for defendants, respondents and appellants. The modification by the Appellate Division of the Special Term judgment was erroneous. (*Jordan Plankroad Co.* v. *Morley,* 23 N. Y. 552; *People ex rel. Feeny* v. *Board of Canvassers,* 156 N. Y. 59; *Woollcott* v. *Shubert,* 169 App. Div. 194; *Edwards* v. *Davis,* 16 Johns. 281; *Almy* v. *Harris,* 5 Johns. 175; *Kavanaugh* v. *Commonwealth Trust Co.,* 181 N. Y. 121; *Brinckerhoff* v. *Bostwick,* 88 N. Y. 52; *Bosworth* v. *Allen,* 168 N. Y. 157; *Pollitz*

v. *Wabash Railroad Co.*, 207 N. Y. 113.) The findings showing that there was no fraud in this case, and that all of the acts complained of were acquiesced in and ratified by the plaintiff, no cause of action was shown and the dismissal of the plaintiff's complaint was proper. (*Skinner* v. *Smith*, 134 N. Y. 240; *Continental Ins. Co.* v. *New York Railroad Co.*, 187 N. Y. 225; *Continental Securities Co.* v. *Belmont*, 206 N. Y. 7; *Pollitz* v. *Wabash Railroad Co.*, 207 N. Y. 113; *Godley* v. *Crandall & Godley Co.*, 212 N. Y. 121.) The findings showed that the salaries paid to Smith and Disosway were fair and reasonable, and were for the benefit of the corporation, and were acquiesced in and ratified by all of the stockholders, and that they did not constitute a waste of the corporation funds, and that there was no fraud; hence such salaries cannot be recovered back. (*MacNaughton* v. *Osgood*, 41 Hun, 109; *Burden* v. *Burden*, 8 App. Div. 160; 159 N. Y. 287; *Duncomb* v. *N. Y., H. & N. R. R. Co.*, 84 N. Y. 190; *Leslie* v. *Lorillard*, 110 N. Y. 519; *Sage* v. *Culver*, 147 N. Y. 241; *Carr* v. *Kimball*, 153 App. Div. 825; 215 N. Y. 634; *Godley* v. *Crandall & Godley Co.*, 153 App. Div. 697; 212 N. Y. 121.)

CRANE, J. Besson & Co. was a corporation created in March, 1897, to carry on a coal and lumber business at Dobbs Ferry, N. Y. The capital stock was $25,000, consisting of 250 shares of the par value of $100 a share, of which Millard F. Smith owned 205 shares, James Murray, the plaintiff, 40 shares, and John G. Disosway, 5 shares. The three stockholders were also the directors and officers of the company, Smith being the president, Disosway the secretary and treasurer, and Murray the vice-president and manager.

The corporation was organized to take over the business of Besson & Co., a partnership composed of Elbridge V. S. Besson and the plaintiff, James Murray. The partnership had become hopelessly insolvent although assisted

financially for some years by the said Millard F. Smith who had advanced to the concern over $14,000. By forming the corporation, Smith endeavored to save the enterprise and the credit and reputation of the business. He had assumed many of the liabilities. Millard F. Smith was a prominent merchant in New York city, being the leading member in the clothing firm of Smith, Gray & Co. His financial backing and identification with the business re-established its credit and rehabilitated its finances so that its condition steadily improved year by year. By 1911, the year of Smith's death, the surplus of assets over liabilities was $51,439.69. There had been a gradual and steady increase in the surplus. Besson had been dropped from the business, but Murray was continued by Smith as director and as manager, his 40 shares of stock being presented to him as a gift. He was the active man in doing the business, Smith giving it little or no personal attention. For his services, Murray received the yearly salary of $1,200 during all the times in question.

Millard F. Smith died November 21, 1911, and John G. Disosway on the 1st day of April, 1912, since which time the directors of Besson & Co. have been Edward S. Smith, Nellie B. Moore and the plaintiff, James Murray.

During the time that Smith and Disosway were connected with the corporation certain personal advances or loans were made to them by Besson & Co. which remained unpaid at their decease. Thereafter this plaintiff, upon due demand, commenced this action in behalf of himself and other stockholders against the executors of the last will and testament of Millard F. Smith, deceased, to recover certain amounts alleged to have been lost and wasted through Smith's neglect and failure to perform his duty as president and director, specifying, among other losses, the personal loans above mentioned.

As to the amount due from Smith for advances made to

him, no question is raised; the estate concedes liability and is willing to make payment.

It is claimed, however, that the Smith estate is liable for the loans made to Disosway, the treasurer, under section 29 of the Stock Corporation Law (Cons. Laws, ch. 59). The Special Term found against the plaintiff and dismissed the complaint upon the merits. The Appellate Division, making new findings of fact, modified the judgment by holding the executors of Millard F. Smith liable for the loan of $3,637.47 made to John G. Disosway. The modification made by the Appellate Division cannot be sustained.

The liability, if any, of Millard F. Smith for the advances made to Disosway is dependent entirely upon section 29 of the Stock Corporation Law. It is as follows:

" Liability of Directors for Loans to Stockholders. No loan of moneys shall be made by any stock corporation, except a moneyed corporation, or by any officer thereof out of its funds to any stockholder therein, nor shall any such corporation or officer discount any note or other evidence of debt, or receive the same in payment of any installment or any part thereof due or to become due on any stock in such corporation, or receive or discount any note, or other evidence of debt, to enable any stockholder to withdraw any part of the money paid in by him on his stock. In case of the violation of any provision of this section, the officers or directors making such loan, or assenting thereto, or receiving or discounting such notes or other evidences of debt, shall, jointly and severally, be personally liable to the extent of such loan and interest, for all the debts of the corporation contracted before the repayment of the sum loaned, and to the full amount of the notes or other evidences of debt so received or discounted, with interest from the time such liability accrued."

The officer or director sought to be held for an advance

made to a stockholder must have made the loan or assented thereto. It is conceded that Smith did not make the loan. As to his consent, we have a finding of fact by the trial court (Finding 41):

" That the balance due to said company upon the accounts of the said John G. Disosway was not shown to be uncollectible, but, if it is, it was a loss which occurred in the usual course of business, and the said Millard F. Smith was not a party to or responsible for said loss."

As this finding of fact was not reversed by the Appellate Division, we must, under section 1338 of the Code of Civil Procedure, assume that it has been affirmed, and it is, therefore, binding upon us. (*Levy* v. *Louvre Realty Co.*, 222 N. Y. 14.)

Smith could not have consented to the Disosway loans without being a party thereto and responsible for their loss. This finding by the trial court above quoted is, therefore, to the effect that Smith did not consent to the loans. The Appellate Division, in making new findings of fact, states nothing about Smith's consent. In fact, it has found to the contrary, for it has stated in its 4th finding of fact that the loans to Smith and Disosway were not acquiesced in or ratified.

Passing this point, however, and assuming that the Appellate Division has found, in effect, that Smith consented to the Disosway loans, we would still be obliged to reverse as there is no evidence to sustain such a finding.

The by-laws gave Disosway, as secretary and treasurer, the power to draw checks upon the funds of the corporation without the signature of any other officer. He was engaged in the grocery business in Dobbs Ferry, and also ran a hotel known as the Livingston Inn. The yearly statements of the profit and loss account of Besson & Co. for the various years from 1897 until 1911 show a liability, in 1897, to John Disosway of $3,061. In 1898 the liabilities of the corporation include $368.38

due to John Disosway. In 1899 the assets of the corporation included $706.72 due from Disosway. In 1900 $1,619.55 due from John Disosway is included as an asset. In 1901 this is reduced to $53.16. In 1902 we again find the company indebted to John Disosway, as the amount of $236.92 is included as a liability. In 1903 the liabilities of the company include $1,128.91 due to Disosway; while in 1904 the statement shows neither liabilities nor assets as including any account with Disosway. From 1905 to 1911 the assets show amounts due from Disosway on his loan account which vary from $2,000 to $3,637.47. The highest loan is included in the last statement of 1910, and is the figure the Appellate Division fixed as Smith's liability for the Disosway loans. The record is barren of any evidence that Smith knew of these loans or assented to them. While the defendant's lawyer remarked that these statements were sent to Millard F. Smith, there is no evidence that he ever received them, or saw them, or knew of their contents. The plaintiff testified that when Disosway wanted money he took it, as he was treasurer and had power to do so. Called as a witness, the plaintiff was given an opportunity to testify regarding Smith's actions and statements, and yet he did not undertake to state that Smith knew of these loans or spoke about them. Although a director and the manager of the business, he swears that Mr. Smith never talked to him about the accounts. Disosway told him, he says, that he went to Mr. Smith's house twice a week and told him what he wanted to know about the affairs of Besson & Co., but what he told him he could not say. Without other facts, it cannot be inferred, so as to create a liability under the above statute, that Millard F. Smith, taking no active part in the affairs of Besson & Co. other than loaning it his credit and giving occasional advice, leaving the management of the business to Murray, the plaintiff, and the

accounts to Disosway, knew of these fluctuating loans in the latter years to Disosway, especially in view of the continuing and increasing prosperity of the company. There was, therefore, no evidence to sustain a finding, if one had been made, that Smith consented to the Disosway loans.

These views render it unnecessary for us at this time to determine whether section 29 of the Stock Corporation Law gives relief solely to creditors to the exclusion of stockholders.

The plaintiff also sought to hold the Smith estate liable for the salary paid to Smith and Disosway from 1903. Upon this branch of the case, the Appellate Division has affirmed the trial court in deciding against him. By a cross-appeal, the plaintiff has brought up for review his claims in this particular, but we think the holding of the lower courts was correct.

The judgment of the Appellate Division should be reversed in so far as it directs that the defendant executors pay $3,637.47, the amount of the Disosway loans and interest and in all other respects the judgment is affirmed, with costs to appellant executors.

HISCOCK, Ch. J., COLLIN, CUDDEBACK, CARDOZO, POUND and ANDREWS, JJ., concur.

Judgment accordingly.